```
             IN THE UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF ARKANSAS
                      PINE BLUFF DIVISION


MICHAEL A. DAVIS                                        PETITIONER


vs.             Civil Case No. 5:08-CV-00189-SWW-JTK


RAY HOBBS,¹ Interim Director,
Arkansas Department of Correction                       RESPONDENT
```

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a

---

¹ Substituted for former Director Larry Norris pursuant to Fed.R.Civ.P. 25(d).

hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

> 1. Why the record made before the Magistrate Judge is inadequate.
>
> 2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.
>
> 3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

This is a successive habeas petition[2] filed pursuant to 28 U.S.C. § 2254 by Michael A. Davis, an inmate of the Arkansas Department of Correction. A Pulaski County jury convicted Petitioner on May 29, 1998, of aggravated robbery, kidnaping and theft of property and sentenced him as a habitual offender to life

---

[2] Petitioner received authorization to file his successive petition from the United States Court of Appeals for the Eighth Circuit on January 31, 2008. (Respondent's Exhibit 14)

imprisonment plus forty years.  (Respondent's Exhibit 1) The conviction arose from an incident involving Sharon Burleson who, while preparing to leave Park Plaza Mall in her green Mercedes, was approached by a man and his armed assailant, forced into her car, and driven to various ATM machines in an attempt to get money before being dropped off in an isolated location. (Respondent's Exhibit 3)  Trial counsel filed a no-merit direct appeal brief under Anders v. California, 386 U.S. 738 (1967), and Petitioner filed a pro se brief.  The Arkansas Supreme Court affirmed Petitioner's convictions.  Davis v. State, Case No. CR 98-1180, 2000 WL 378350 (Ark., April 13, 2000). (Respondent's Exhibit 3)

On June 7, 2000, Petitioner filed a Rule 37 petition, and the trial court denied relief.  The Arkansas Supreme Court affirmed the denial of Rule 37 relief.  Davis v. State, Case No. CR 01-57, 2002 WL 160686 (Ark., Jan. 31, 2002).  (Respondent's Exhibit 6) Petitioner thereafter sought habeas relief in this court.  In Civil Case No. 5:02CV00472 HLJ, Michael A. Davis vs. Larry Norris, Director, Arkansas Department of Correction, the Court denied relief and dismissed the petition with prejudice because Petitioner did not fairly present his claims to the state court and he did not establish cause for the default, or that the failure to address the claims would result in a miscarriage of justice.  (Respondent's Exhibit 8) Both the Court and the Eighth Circuit Court of Appeals

3

denied the request for a certificate of appealability. (Respondent's Exhibits 9 and 10)

Davis then filed a pro se petition in the Arkansas Supreme Court to reinvest jurisdiction in the trial court so it could consider a Petition for Writ of Error Coram Nobis. The Arkansas Supreme Court denied that petition at initial review and upon reconsideration. See Davis v. State, Case No. CR 98-1180, 2005 WL 2792336 (Ark., Oct. 27, 2005), Respondent's Exhibit 11, and Davis v. State, Case No. CR 98-1180, 2006 WL 62214 (Ark., Jan. 12, 2006), Respondent's Exhibit 12. Subsequently, Davis sought state habeas corpus relief in March 2006, and the circuit court denied the petition. The Arkansas Supreme Court refused to lodge the record on appeal because the notice was untimely, so Petitioner filed a motion for belated appeal that was also denied. Davis v. State, Case No. CR 06-1280, 2006 WL 3515133 (Ark., Dec. 7, 2006), Respondent's Exhibit 13.

Petitioner received permission from the Eighth Circuit Court of Appeals to file a successive petition for writ of habeas corpus in January 2007. Petitioner filed the current action in July 2003. Respondent admits Petitioner "is in his custody and that there currently are no available, non-futile state remedies available to him." (Response, DE #7, at 3) He contends, however, that Petitioner is not entitled to relief and that the successive petition should be dismissed.

4

I.

To overcome the denial of the petition, Petitioner alleges the factual bases of his claims were not available at the time of his previous petition. Specifically, Petitioner attaches five Exhibits to his Petition that he claims helps him prove his actual innocence and includes evidence that was either unavailable or not presented at his trial.

In non-capital cases, actual innocence may be asserted as a "gateway" through which a petitioner may pass to gain consideration of procedurally defaulted claims, absent a showing of cause and prejudice. Schlup v. Delo, 513 U.S. 298 (1995). "[S]uch a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial," id. at 324, which shows a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 327. In the Eighth Circuit, "evidence is new only if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." Amrine v. Bowersox, 128 F.3d 1222, 1230 (8th Cir. 1997).

II.

The evidence Petitioner alleges was unavailable at his trial includes Exhibit A, the affidavit of John Frawley, signed December

11, 2005, and Exhibit B, the affidavit of Jabari Cummins, signed December 2, 2002.  Exhibit C is the Arkansas State Crime Laboratory DNA test results from a condom found in the green Mercedes that excluded Petitioner and Jabari Cummins as being potential contributors.  Exhibits D and E[3], the Pulaski County jail cell assignment history of Petitioner and John Frawley respectively are the evidence Petitioner alleges was not presented at trial. (Habeas Petition, pp. 20-24)

John Frawley

Frawley was an inmate at the Pulaski County Jail who informed police that Petitioner told him he committed the crimes against Burleson.  Frawley testified at Petitioner's trial that, while they were both at Pulaski County Jail, Petitioner told him that he and another individual took Burleson from Park Plaza Mall and drove her to several ATM machines in an attempt to get money.  Frawley stated Petitioner told him he was armed with a gun and had threatened Burleson.  When they were unsuccessful in retrieving money from the ATM, Frawley stated Petitioner told him they took jewelry and $600-$700 from Burleson's purse, drove her to Colonel Glenn Road or somewhere in the country, tied her up and left.  Frawley further testified Petitioner told him the only evidence police had against

---

[3] Petitioner's Exhibits D and E were apparently sent to him from the Pulaski County Office of the Sheriff in June 2002, after Petitioner made a Freedom of Information Request.  (Habeas Petition, Exhibit No. I)

him was a phone call he made to his home using Burleson's cell phone. (See Respondent's Exhibit 6)

In Exhibit A, the affidavit of Frawley, Frawley recants his testimony and states he lied at Petitioner's trial.  He claims the prosecuting attorney gave him information to assist him in his testimony against Petitioner.  Frawley states "I was not thinking straight at the time because I was arrested and charged with felonies myself, but I was told if I would testify that Michael Davis had told me he committed the crimes he was charged with and assist the Prosecuting Attorney's office to obtain a conviction against Michael Davis they would give me a lesser sentence[.]" (Habeas Petition, Exhibit A)

Jabari Cummins

Cummins did not testify at Petitioner's trial, however, in Exhibit B, he provides an affidavit in which he states he gave police a "completely untrue" statement when he claimed that Petitioner was with him and a woman named Patricia Wilson[4] in the

---

[4] Wilson testified at Petitioner's trial that the man she knew as "Joe" referred to the other man in the car as "Mike." (Respondent's Exhibit 3) Cummins states in his affidavit that he was arrested and taken into custody after he "had been positively identified as one of two men who a drug addict had said picked her up." (Habeas Petition, Exhibit B) Because he "thought the drug addict had called the police and was trying to say she had been raped[,]" Cummins admitted to knowing her and claims "that on the night of September 22, 1997, me, her, and Kana Henderson were all in the green mercedes benz smoking, drinking, and having sex which me and Kana paid for the sex with drugs." Id. It was after this admission, Cummins states, that he learned the car had been stolen and that its owner had been kidnaped and robbed.

stolen green Mercedes on September 22, 2007. (Habeas Petition, Exhibit B) In the affidavit, Cummins states Kana Henderson, not Petitioner, was the man with him that night. He states that, although he told the detective that Petitioner was not the man with him that night, he knew from the detective's "tone" that "he wanted [Cummins] to say that Michael Davis was the other man who was in the car instead of Kana Henderson." Id. Cummins claims, however, that he admitted to the detective that he tried to use a phone in the car "one or two times" to call Petitioner but that he "was unable to connect because nobody answered." Cummins alleges because he "was scared and [the detective] had promised [him] he was going to let [him] go that day[,]" he went along with the leads and gave a taped statement after being told what to say by the detective. Id.

DNA evidence

Exhibit C is a report from the Arkansas State Crime Lab. When police located the stolen green Mercedes, they found a used condom. Both Cummins and Petitioner submitted DNA samples that were compared with the semen found in the condom. Both were excluded. (See Habeas Petition, Exhibit C)

Jail Records

Exhibits D and E respectively purport to be the Pulaski County Jail cell assignment histories for Petitioner and Frawley.

III.

In support of his request for relief in this successive petition, Petitioner raises the following grounds:

> 1. The police forced Jabari Cummins to make a statement implicating Petitioner in the crime and the prosecutor made a deal with John Frawley for his testimony at trial and these things unconstitutionally were not disclosed to the defense. (Habeas Petition, pp. 24-40)
>
> 2. He was arrested without probable cause, the prosecutor engaged in misconduct during his trial and he was selectively and vindictively prosecuted. (Habeas Petition, pp. 40-49)
>
> 3. Counsel performed ineffectively at trial. (Habeas Petition, pp. 49-55)

> AEDPA [Antiterrorism and Effective Death Penalty Act] greatly restricts the power of federal courts to award relief to state prisoners who file second or successive habeas corpus applications. If the prisoner asserts a claim that he has already presented in a previous federal habeas petition, the claim must be dismissed in all cases. § 2244 (b)(1). And if the prisoner asserts a claim that was *not* presented in a previous petition, the claim must be dismissed unless it falls within one of two narrow exceptions. One of these exceptions is for claims predicated on newly discovered facts that call into question the accuracy of a guilty verdict. § 2244(b)(2)(B). The other is for certain claims relying on new rules of constitutional law. § 2244 (b)(2)(A).

Tyler v. Cain, 533 U.S. 656, 661-62 (2001) (emphasis in original). Petitioner apparently relies on the former exception. To avoid dismissal of claims presented in the second or successive petition that were not presented in the prior petition, Petitioner must "assert a new rule of constitutional law or raise new facts that establish the petitioner's innocence of the underlying offense." Singleton v. Norris, 319 F.3d 1018, 1023 (8th Cir. 2003). The

general bar against abusive or successive claims therefore extends to new claims that could have been raised or developed in an earlier petition and to successive claims that raise grounds identical to those heard and decided on the merits in a previous petition.  On the other hand, if a second petition raises a claim that did not arise until after the first petition, then there is no "successive petition" bar.  See id.

Pursuant to 28 U.S.C. § 2244(b)(4), the district court "shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section."  That includes subsection (d)(1)(D) that requires a habeas petitioner to, as applicable in this instance, bring his claims within a "1-year period of limitation" of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

IV.

Respondent asserts Petitioner cannot satisfy the requirements of 28 U.S.C. § 2244(d)(1)(D). (Response, DE #7, at 7)  Respondent states

> the limitations period in Davis' case began to run on whatever date Davis could have discovered, using due diligence, that Frawley never was housed with him at the Pulaski County jail and then subsequently perjured himself at trial and that Cummins falsely implicated him to the police.  Certainly the one year limitation began to run by the date Davis obtained the jail records and by the dates that Cummins and Frawley each signed their affidavits in 2002 and 2005.  Davis,

> moreover, knew at the time of trial where in the county jail he had been incarcerated and who had been incarcerated there with him. Likewise, Davis has, since cross-examination at trial, challenged the veracity of Frawley's testimony. He offers no reason why Frawley's affidavit could not have been obtained at trial, immediately after trial, in Rule 37 or for consideration in his prior federal habeas corpus action.
>
> Even assuming that the Frawley affidavit was somehow not diligently discoverable until it was executed on December 12, 2005, and ignoring the indisputable fact that the remainder of Davis' "new evidence" was presented to this Court in 2002, Davis' petition clearly is still untimely under § 2244 (d)(1). At best for Davis, his new petition must have been filed by December 12, 2006. Davis, however, did not even seek permission to file his successive petition until after the one year time period already had concluded—in January, 2007.
>
> . . .
>
> Davis cannot establish, moreover, that "the facts underlying [his claim] ... would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found [him] guilty of the underlying offense." See § 2254(b)(2). Cummins' affidavit is not "new" and is irrelevant in any event because he never testified at trial. The jail records submitted by Davis also are not "new" and they fail to establish where in the Pulaski County jail Frawley was housed in December/January of 1997 and 1998. And Frawley's recantation must be viewed in light of all the evidence introduced at trial, including the victim's testimony that she gave her kidnappers almost $400 from her purse, that one of her assailants was called "Mike," her recollection that her assailant was approximately 5'10", testimony of the later-picked-up drug addict that one of the men in the victim's car with her was named "Mike" and he had "a whole lot of money" with him, the fact that the victim's cell phone was used, after the victim had been bound and dumped in the woods, to call Davis' mother's house and Davis' spontaneous, incriminating statement to police—"I didn't do any of that stuff with that woman and you can't prove it"—when he was approached by police while he was "crouched down" in the backseat of [a] parked car and asked to identify himself before he was arrested.

(Response, DE #7, at 7-8)

11

In Reply, Petitioner challenges several aspects of the Response.  First, he claims Frawley's recantation of his trial testimony renders moot any issue as to his presence at the Pulaski County Jail in 1997 and 1998.  Second, Petitioner alleges that it "is not outside the scope of reality to assume kidnappers used alias names in front of the victim" and that the use of aliases like "Mike" and "Joe" are hardly incriminating evidence.  Further, he submits that a person 5'10" in height is not unusual and supposes that a large portion of the population is of this "average height."  Third, he states Cummins, in his affidavit, explains how he used the victim's cell phone and attempted to contact him by calling his mother's house.  As to the incriminating statements he made, Petitioner claims fourth that he wears hearing aides in both ears, a condition that existed prior to his arrest and conviction.  He denies making any "spontaneous incriminating statement."  He submits that "any police department willing to suborn perjury from Cummins would not hesitate to lie themselves" and alternatively that, due to his hearing disability, he "may have been responding to what he thought he heard Officers ask."  (Reply, DE # 11, at 7-8)  Further, Petitioner claims he satisfies the "constitutional error" prong of § 2244(b)(2)(B) "by alleging the prosecutor suborned perjury in violation of due process."  Id. at 6.  Finally,

although he concedes that his claims are procedurally defaulted,[5] Petitioner submits he can overcome this procedural bar by showing with this new evidence his actual innocence. Id. at 10.

V.

The Court agrees with Respondent that Petitioner knew of the basis for his claims at least by the date he obtained the jail records, on or about June 21, 2002, or the dates Cummins and Frawley each signed their affidavits in December of 2002 and December of 2005 respectively. Given this, Petitioner had, at the latest, until December 2006 to file his new petition, and he did not seek permission to file the successive petition until January 2007, after the 1-year limitation period had passed. Therefore, the petition is untimely under 28 U.S.C. § 2244(d)(1).

Even assuming that Petitioner has shown that the factual predicate for his claims were discovered through the exercise of due diligence and that these facts were "new" and timely presented, he has not shown, based on this evidence, that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298 at 321 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). It is evidence of factual innocence coupled with a constitutional violation that triggers the actual innocence exception. For this to occur, the

---

[5] The Court ruled in the first habeas petition that Petitioner offered no explanation as to the cause of the default of his claims. (See Respondent's Exhibit 8)

court must be persuaded that, in light of all the evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt[,]" and the inquiry is not limited to the evidence presented or admitted at trial. Washington v. Delo, 51 F.3d 756, 761 (8th Cir. 1995). "Rather, in the interests of justice, we consider all probative evidence in an effort to assess a petitioner's claim of innocence." Id. Given all the evidence, the Court concludes this is not that "rare" and "extraordinary case" in which the Petitioner "presents evidence of innocence so strong that [the] court cannot have confidence in the outcome of the trial[.]" Schlup v. Delo, 513 U.S. at 315.

Based on the foregoing reasons, IT IS THEREFORE ORDERED that this petition be, and it is hereby, dismissed with prejudice. The relief prayed for is denied.

SO ORDERED this 18th day of May, 2010.

_____
United States Magistrate Judge